# United States Court of Appeals

## For the First Circuit

No. 07-1261

MISAEL ACEVEDO-AGUILAR,

Petitioner,

v.

MICHAEL MUKASEY,[*] Attorney General,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Lipez, Circuit Judge,

Cyr, Senior Circuit Judge,

and Howard, Circuit Judge.

Peter Darvin on brief for petitioner.
Peter D. Keisler, Assistant Attorney General, Civil Division,
Terri J. Scadron, Assistant Director, and Kathryn L. Deangelis,
Trial Attorney, Office of Immigration Litigation, United States
Justice Department, on brief for respondent.

February 15, 2008

---

[*]Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Michael B.
Mukasey has been substituted for former Attorney General Alberto R.
Gonzales.

**HOWARD**, **Circuit Judge**.  Misael Acevedo-Aguilar, a native and citizen of Mexico, petitions for review of a Board of Immigration Appeals ("BIA") order affirming the decision of an immigration judge ("IJ") that he was ineligible for cancellation of removal because he was not continuously present in the United States for the requisite 10 years prior to his application, as required by  section 240A(b) of the Immigration and Nationality Act, 8 U.S.C.  § 1229b.  We deny the petition.

## STANDARD OF REVIEW

Where, as here, the BIA adopts and affirms a portion of the IJ's decision, while also providing additional analysis of its own, we directly review the adopted portions of the IJ decision, Sulaiman v. Gonzalez, 429 F.3d 347, 350 (1st Cir. 2005), as well as the BIA's additions,  Stroni v. Gonzales, 454 F.3d 82, 87 (1st Cir. 2006).  We review the decisions of the IJ and BIA according to a "substantial evidence" standard, under which we will uphold the decisions if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Carcamo-Recinos v. Ashcroft, 389 F.3d 253, 256 (1st Cir. 2004) (citation and internal quotation omitted).  Under this deferential standard, we will reverse only if "the record evidence would compel a reasonable factfinder to make a contrary determination."  Stroni, 454 F.3d at 87 (citation omitted).

**FACTUAL BACKGROUND AND LEGAL ANALYSIS**

The petitioner claims to have first entered the United States without inspection in August 1992, when he was 16 years old, by crossing the Mexican border. In March 2001, he married Kobi Littlefield, the mother of his then one-year old daughter, and shortly thereafter filed an I-485 adjustment of status application containing an I-130 immediate relative visa petition, filed by his wife. As a result of marital discord which eventually culminated in divorce, Ms. Littlefield withdrew her I-130 petition, which led to the denial of Acevedo-Aguilar's I-485 application in November 2001.

On August 7, 2003, federal immigration authorities issued Acevedo-Aguilar a Notice to Appear, charging him with removability. He eventually conceded removability, but filed an application for cancellation, pursuant to 8 U.S.C. § 1229b(b), under which removal of a deportable alien may be cancelled if, inter alia, he "has been physically present in the United States for a continuous period of 10 years immediately preceding the date of [his] application." Such "physical presence time" stops accruing upon service of a notice to appear. 8 U.S.C. § 1229b(d)(1). In addition, an alien departing the United States for "any period in excess of 90 days or aggregate periods exceeding 180 days" is considered to have failed to "maintain a continuous physical presence in the United States." 8 U.S.C. § 1229b(d)(2).

Under this construct for cancellation of removal, Acevedo-Aguilar's burden was to prove that he was continuously present in the United States for the 10 years preceding August 7, 2003. The dispute in this case centers on a period in 1998 when he returned to Mexico to attend his brother's wedding. He testified that he left the United States on March 20, 1998, and submitted into evidence an airline ticket receipt bearing that date. Thus, he would have had to return to this country by June 18, 1998, to fall within the 90 day rule.

Pinpointing the petitioner's return date, however, is no simple task, since he reentered to the United States by illegally crossing the border at Nogales, Arizona. Weighing heavily against him was the I-485 application for adjustment he submitted in 2001, in which he noted that his last entry into the United States was July 9, 1998, 21 days outside the allowable time window. He testified however, that he returned to the United States on June 10, 1998, which would be within the allowable time. He explained that the discrepancy was due to confusion about his departure date, which caused him to put the wrong date on the I-485. He testified that he knew he was away for approximately two months and a few days after his brother's April 18 wedding, so when his mother showed him the plane ticket with the March departure date, he realized that his correct return date was in June, not July.

In addition to his own testimony, Petitioner's mother testified about his absence from the United States in 1998. She did little to clear up the confusion, however, as she offered three different accounts of Acevedo-Aguilar's return, testifying first that she last saw him in Mexico on May 10, 1998, prior to an expected border crossing between May 10 and June 10. She also testified that her son was in her house in Mexico between May 10 and June 10, and later stated that he crossed the border into the United States on June 5.

In finding that Acevedo-Aguilar had not met his burden of proving his continuous presence in the United States, the IJ cited the discrepancy between petitioner's testimony regarding his absence, the plane ticket receipt and his sworn I-485 form. The BIA adopted that finding and placed additional reliance on the inconsistent testimony of petitioner's mother regarding petitioner's whereabouts between March and July 1998. As these conclusions are supported by substantial record evidence, the petition for review is **denied.**[1]

---

[1]Because we resolve this petition on the issue of Acevedo-Aguilar's 1998 absence from the United States, we do not reach his other claims of error.