NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 4, 2017[*]
Decided May 9, 2017

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 17-1059

| | |
|---|---|
| ANTHONY DAVID ATKINSON, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | No. 14 cv 9923 |
| SG AMERICAS SECURITIES, LLC, | |
| *Defendant-Appellee*. | Sharon Johnson Coleman, |
| | *Judge*. |

**O R D E R**

Anthony Atkinson contends that his former employer, now called SG Americas Securities ("SGAS"), did not accommodate his disability (hearing loss and deficits from a brain injury) and discriminated and retaliated against him in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112. The district court granted summary judgment to SGAS on these claims. It also dismissed as legally insufficient

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

five other claims, only two of which Atkinson now challenges on appeal. Because the undisputed facts show no ADA violation and the dismissed counts do not state claims for relief, we affirm the judgment.

We begin by describing the facts on the disability claims. The district judge deemed SGAS's proposed facts admitted because Atkinson did not respond to them in accordance with the local rules. *See* N.D. ILL. L.R. 56.1(b)(3). District courts may reasonably enforce compliance with these rules, even for a pro se litigant like Atkinson, and we construe the record of those facts in the light most favorable to Atkinson. *See Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015).

In 2002 Atkinson began to work as a support analyst for SGAS, which provides electronic software for futures trading. He answered phone calls from traders who needed technical support. In October 2011 Atkinson was in a motorcycle accident and lost all hearing in his left ear. His doctor released him back to work without restrictions in December. But three months later, in March 2012, Atkinson had a brain hemorrhage while on vacation overseas. His recovery was much more extensive this time, and he was on medical leave until September 2012.

When he returned in September, Atkinson was unhappy with some of his work conditions. His workspace had been dismantled while he was gone, so he picked a new workstation close to his team members, but he had difficulty hearing people on his left-ear side. His passwords had also expired, and he did not have immediate access to the systems that he thought he needed. Additionally, he had problems with his new laptop and wanted to use his old desktop computer, which he found elsewhere in the office. Also because Atkinson was scheduled for training on a new computer system later than most other employees, he thought he was at a disadvantage. Finally, the company shifted his hours to later in the day and varied his daily start times.

To discuss these work conditions, Atkinson met with his then-manager, Greg Stephens, and his human-resources representative, Lisa Foster, in January 2013. He described his hearing loss and two traumatic brain injuries as disabilities and said that SGAS had failed to accommodate them. In response Foster offered him a new workstation (but not his old, dismantled one), his old desktop computer, an ergonomic keyboard, and a new, fixed start time (though not as early as he'd worked previously). After their meeting Atkinson sent an email demanding these accommodations, and Foster replied that they had already agreed to his requests.

Despite these accommodations, Atkinson still complained about his work conditions. He renewed criticisms about his workspace, access to systems, and start time. SGAS responded by asking that Atkinson have an independent medical examination to determine if the accommodations he sought that were unrelated to his hearing were medically necessary. He did not agree to the exam and instead provided two doctors' notes. One stated that he needed a seating placement that accommodated his hearing loss. The other stated that he needed time for medical appointments, a consistent work schedule, an ergonomic keyboard, and computer monitors that didn't flash. SGAS was already providing these accommodations, so it did nothing further.

Around the same time, SGAS became dissatisfied with Atkinson's work. Clients and software providers were complaining about how he handled calls. They said that he did not provide needed information or properly escalate their complaints to a manager. Stephens reviewed some of the calls and concluded that the complaints were valid. As a result, Atkinson's 2012 performance evaluation (given in January 2013) rated him a 2—"Meets Some but Not All Expectations."

Because of Atkinson's performance issues, management reassigned him in February 2013 to a project in a different group that they thought was a better fit for him. The project involved reduced customer contact, fewer deadlines, and less stress. He received a workspace closer to his new team, and his new manager told his coworkers to make an effort to speak into his good ear. Atkinson did not like his new desk's location because he still had trouble hearing his coworkers, his desk was under a vent blowing cold air onto him, and the desk was a folding, temporary station. (He later received a permanent desk when one became available.) Eventually he was permanently assigned to this new team; although his title changed, his pay remained the same.

His employment ended a year after this reassignment. In November 2014 the company announced a merger with another business. SGAS asked all employees to sign an employee agreement or be deemed to have resigned. Atkinson would not sign the agreement because he did not agree with the arbitration clause, so he "resigned" effective January 2015. He did not receive any severance pay. Three other employees who would not sign the agreement also resigned without severance pay.

The district court granted SGAS's motion for summary judgment on Atkinson's ADA claims. On the claim for a reasonable accommodation, it ruled that SGAS had adequately accommodated Atkinson's hearing loss and no evidence suggested that any

other accommodation was medically necessary. On the disability-discrimination claim, it explained that Atkinson suffered no adverse action: His reassignment was not a demotion, his resignation was not a firing, and any other perceived adverse actions were not material. And even assuming that the actions were adverse, he had not shown that SGAS had imposed them because of his disability. Finally, the court concluded that Atkinson's retaliation claim failed. Although his complaints to Foster were close in time to some of the employment changes, timing alone was not enough.

In evaluating Atkinson's arguments on appeal, we first address a procedural decision that Atkinson identifies and that preceded summary judgment. Atkinson argues that the district court abused its discretion in granting discovery extensions to both sides. He says that the court improperly extended discovery for over 100 extra days, allowing SGAS more time before it filed its motion for summary judgment. This is wrong in two respects. First, the deadline to file dispositive motions was extended by only a month, not 100 days. Second, Atkinson has not explained how the extension prejudiced him, and without prejudice we have no reason to disturb the ruling. *See Jones v. City of Elkhart*, 737 F.3d 1107, 1116 (7th Cir. 2013). Indeed, Atkinson *cannot* show prejudice because the court granted the extension primarily to benefit him by giving him time to depose two additional SGAS employees.

Atkinson briefly attacks the substance of the summary-judgment decision itself, but we see no error. For Atkinson's reasonable-accommodation claim to go forward, he had to present evidence that SGAS failed to reasonably accommodate a known disability. *See Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 852 (7th Cir. 2015). He did not. The uncontradicted evidence shows that SGAS took his accommodation requests seriously, engaged in an "interactive process" with Atkinson to determine what accommodations it reasonably needed to make, and made them. *See Swanson v. Village of Flossmoor*, 794 F.3d 820, 827 (7th Cir. 2015). Although Atkinson was dissatisfied when he did not receive every change that he demanded, the ADA requires only that he receive reasonable accommodations of his disabilities. *See id.* His discrimination and retaliation claims also fail. He presented no evidence that his disability motivated SGAS to reassign him, change his systems access, assign him a new workstation, or ask him to sign a new employment agreement or resign. *See Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 1115 (2017). And although he reiterates the close timing between his complaints and these employment actions, "suspicious timing" is generally not enough to establish causation. *See id.* at 564; *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 221 (7th Cir. 2015).

Finally, Atkinson contends that the district court erred in dismissing five counts of his amended complaint, but he develops an argument about only two of them. The first count asserted the Illinois tort of intentional infliction of emotional distress. Atkinson alleges that SGAS committed this tort primarily by placing him in a cold and drafty office space, which he believes aggravated his medical conditions. Unpleasant office assignments do not suffice as "extreme and outrageous" conduct because in employment settings the tort is limited to "truly egregious" conduct. *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567–68 (7th Cir. 1997). To commit the tort, an employer must abuse its power "in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006) (quotation marks omitted). That did not occur here, so the district court properly dismissed this claim.

The second dismissed count asserts that SGAS unlawfully asked Atkinson for an independent medical examination. Atkinson alleges that the request violated 42 U.S.C. § 12112(d)(4)(A) of the ADA because it was not job-related, just a "fishing expedition" into his medical condition. But he admits that he asked for disability accommodations, and the company was entitled under the ADA to request a medical exam to determine what accommodations were medically necessary. *See* 29 C.F.R. Pt. 1630, App. § 1630.14(c); *Kennedy v. Superior Printing Co.*, 215 F.3d 650, 656 (6th Cir. 2000). Atkinson thus pleaded himself out of court on this claim.

Atkinson's remaining arguments are meritless and do not warrant discussion. Accordingly, we AFFIRM the judgment.